WILLIAM L. HOLLOWAY, Administrator, etc., Plaintiff in Error,
*v.* A. W. ARMSTRONG, Defendant in Error.

NEW TRIAL.—Where the verdict of the jury is clearly in accordance with the weight of the evidence, the court will not, in a civil case, reverse for error in the instructions given by the court to the jury.

IN error from the Circuit Court of Franklin county. Hon. Stanhope Posey, judge.

D. B. Cani, as administrator *ad colligendum* of John Holloway, deceased, sued in *replevin*, A. W. Armstrong, for the recovery of a negro girl, Ann. This suit was instituted on the 24th day of December, 1852. Cani afterwards resigned, and W. L. Holloway was appointed administrator of said estate, and a *scire facias* was sued out to revive the suit in his name. Defendant demurred to the *scire facias*, upon the ground that a collector was not authorized by law to maintain the action of *replevin*. The demurrer was overruled, and judgment of revivor entered.

At the March term of the court, 1854, there was a verdict for defendant, and motion for a new trial by plaintiff, which was sustained. Defendant excepted to the judgment of the court, granting the new trial, and embodied the evidence in his bill of exceptions.

At the September term, A. D. 1854, verdict was rendered for plaintiff, and defendant moved for a new trial, which was also granted; and the plaintiff excepted, and filed his bill of exceptions, embodying the evidence in the cause.

At the September term, 1855, verdict was rendered for the defendant. A motion was made for a new trial by plaintiff, which was overruled. The plaintiff filed his bill of exceptions to this judgment of the court, setting out the testimony, and plaintiff sued out this writ of error.

On the first trial, plaintiff proved by D. B. Cani, former collector and plaintiff in the action, that in 1848 or 1849—thinks it was in December, 1849—the plaintiff's intestate, then

living in Louisiana, had the negro in controversy in his possession, and that she was his property. That the negro girl was then five or six years old; that he heard John Holloway say, in presence of A. B. Graham and Mrs. Jane Lord, his (J. H.'s) sister, that he had bound said slave to Jane, and that she might keep her, if she would treat her well; and in a short time afterwards Jane came to this state, bringing said slave with her. That after Holloway died, the said Jane delivered the said negro to him to be carried to Louisiana, and appraised and sold as a part of John Holloway's estate. That Jane, in a few days afterwards, came and took the negro away, saying she would carry the negro down herself. John P. Steward stated that John Holloway was domiciled in Louisiana, and died there in 1851; that Cani was appointed collector of his estate on the 24th day of December, 1852, and the plaintiff appointed administrator in the spring of 1853.

H. G. Meredith, stated that he executed the writ of *replevin*, and that defendant, Armstrong, was in possession of, and claimed the negro Ann at that time, and that she was worth about $600, and was about ten years old.

A. B. Graham, for defendant, stated that he heard no such declaration of John Holloway as was stated by witness, Cani, to have been made in his presence.

Jane Lord, having been released from her covenant of warranty by defendant, testified that she was a sister of John Holloway, and had lived with him and kept house for him some five or six years, whilst he was a bachelor; and that in 1848, her said brother told her that if she would come to see him, he would give her a little negro; that in January, 1849, she went to see him, and he gave her the negro girl in controversy. That there was nothing said about a loan of said negro; that she would not have accepted her as a loan, she being small and weakly, and unfit for service; that she would not have consented to raise the negro, and be bound to give her up, when called for: that she had, about January, 1852, sold the negro to defendant, who had paid her a valuable consideration therefor.

The evidence on the second trial was the same as that on the

first, except that Mrs. Lord stated—in addition to her testimony on the first trial—that plaintiff Holloway had told her he was carrying on this law suit "for spite," and that he hated Armstrong; and that "he intended to law him as long as he could find law to law him with;" and that Cani had represented to her that it was necessary that the negro should be carried back to Louisiana to be divided, and that she could then bring her back; and that this was the reason why she had sent the negro to Cani, to be sent to Louisiana; but that on reflection, she was satisfied that she had done wrong, and took the negro away; that her brother, John Holloway, was rich, and she poor; and he had died, leaving a widow, but no children: that she sold the negro to defendant in February, 1852.

On the third trial, the evidence was in substance the same as on the second, except that Cani stated, in addition to his former testimony, that about the time Mrs. Lord delivered up the negro to be carried to Louisiana, she stated to him, that she wished to purchase the same at the administrator's sale, and asked him to assist her to do so: and except, also, that the statements in Mrs. Lord's deposition in relation to plaintiff's declarations, were ruled out.

Under the opinion of the court, it is unnecessary to set out the instructions.

*H.* and *W. S. Cassidy*, for plaintiff in error,

Filed an elaborate brief, reviewing the testimony, and discussing the propriety of the instructions given and refused by the court below.

*D. W. Hurst*, for defendant in error.

FISHER, J., delivered the opinion of the court.

This was an action of *replevin* in the Circuit Court of Franklin county, brought by the plaintiff as administrator of John Holloway, deceased, to recover a slave in the possession of the defendant.

The question submitted to the jury under the testimony on the trial below, was, whether the intestate made an absolute gift of

the slave to the person from whom the defendant claims, or whether she held the slave under a loan. The testimony offered on the three several trials in the court below, was conflicting. We are of opinion, however, that the weight of testimony was in favor of the gift of the slave; and the jury having twice 'sustained this view of the evidence, their verdict ought to stand.

The verdict being according to the clear preponderance of evidence, we deem it unnecessary to notice the instructions of the court on the Statute of Limitations.

Judgment affirmed.